UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 22-00047 LEK |
|---|---|
| Plaintiff, | |
| vs. | |
| BRYAN MELVIN BRANDENBURG, | |
| Defendant. | |

**ORDER DENYING DEFENDANT'S FIRST PRETRIAL MOTION: MOTION TO SUPPRESS STATEMENT, [FILED 4/26/23 (DKT. NO. 49)]**

      Defendant Bryan Melvin Brandenburg ("Defendant" or Brandenburg") seeks to suppress statements he made to law enforcement officers on May 6, 2022. See Defendant's First Pretrial Motion: Motion to Suppress Statement, filed 4/26/23 (dkt. no. 49) ("Motion to Suppress").  The hearing on the Motion to Suppress was held on May 22, 2023.  See Minutes, filed 5/22/23 (dkt. no. 54).  After consideration of the submissions and arguments of the parties, the Motion to Suppress is denied because, when viewed from an objective viewpoint, a person would reasonably conclude that he or she could freely walk away from the law enforcement's questioning under the circumstances of Brandenburg's interrogation on May 6, 2022.

**BACKGROUND**

      On May 6, 2022, Brandenburg was questioned by law enforcement officers in front of his home.  Three Federal Bureau

of Investigation ("FBI") agents, and two Honolulu Police Department ("HPD") detectives approached Brandenburg's home, knocked on his front door, and asked if they could speak to him. Brandenburg came out of his home and agreed to speak to the agents in the front of his home.  FBI Special Agent Haider Alkhazaali ("SA Alkhazaali") introduced himself and the two other FBI agents, and the HPD detectives.  SA Alkhazaali asked Brandenburg to confirm his identity and Brandenburg offered to show his driver's license.  No verbal or written warnings were given regarding Brandenburg's constitutional right to remain silent.  An audio recording of the interrogation was taken and subsequently transcribed.[1]  See Defendant's Motion to Suppress, Decl. of Counsel, Exh. A (verbatim transcription of audio recording of interview taken on May 6, 2022 ("Transcript")); Exh. B (audio recording of interview taken on May 6, 2022) ("Audio Recording")).  The recording was started when law enforcement arrived at Brandenburg's residence and before SA Alkhazaali knocked on the front door, and continuously recorded until the interrogation concluded.  During the interrogation, Brandenburg was shown copies of emails sent to individuals in the State of Utah that contained bomb threats.  See, e.g.,

---

[1] A computer disk of the audio recording was provided by Brandenburg.  The Court has listened to the entire recorded interrogation.

Transcript at 19, 21, 22.  He was asked to initial the emails shown to him as confirmation that these were sent by him, and Brandenburg complied.  See, e.g., id. at 19.  The interrogation took place over approximately thirty-nine minutes outside of the front door of Brandenburg's residence.  Brandenburg left that area and returned inside of the residence on two occasions – once to get his driver's license and the second time to retrieve his reading glasses.  SA Alkhazaali accompanied him on the first occasion inside the residence, and SA Alkhazaali and another agent accompanied him on the second occasion.

A warrant for Brandenburg was issued on May 20, 2022. See Arrest Warrant Return, filed 5/23/22 (dkt. no. 5).  He was brought to court for his initial appearance on May 24, 2022 and, on May 27, 2022, he was ordered detained pending trial.  See Minutes – EP: As to Defendant Bryan Melvin Brandenburg – Initial Appearance, filed 5/24/22 (dkt. no. 8); Minutes – EP: As to Defendant Bryan Melvin Brandenburg – Telephonic Detention Hearing, filed 5/27/22 (dkt. no. 10).  On June 2, 2022, a grand jury indicted Brandenburg on six counts of threatening and conveying false information about using an explosive under 18 U.S.C. § 844(e), and one count of transmitting a threat in interstate commerce under 18 U.S.C. § 875(c).  See generally Indictment, filed 6/2/22 (dkt. no. 12).

**DISCUSSION**

Brandenburg moves to suppress the statements that he gave on May 6, 2022 during questioning by law enforcement. It is agreed by the parties that the warnings required under Miranda v. Arizona, 384 U.S. 436 (1965) and its progeny – *i.e.*, Miranda warnings – were not given before he was questioned. There is no dispute that he was interrogated; that is, words were used that were "reasonably likely to elicit an incriminating response from [Brandenburg]." See Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (footnote omitted). Brandenburg, however, contends that he was "in custody" for Miranda purposes during the questioning, and that the law enforcement officers' failure to administer Miranda warnings requires suppression of his statements. See Motion to Suppress at 1.

Warnings must be given before interrogation where an individual is "in custody":

> We held in Miranda that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S., at 444. Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial. Compare *id.*, at 492, 494, with Harris v. New York, 401 U.S. 222 (1971). An officer's

4

> obligation to administer Miranda warnings attaches, however, "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (*per curiam*); see also Illinois v. Perkins, 496 U.S. 292, 296 (1990). In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (*per curiam*) (quoting Mathiason, *supra,* at 495).

Stansbury v. California, 511 U.S. 318, 322 (1994). The inquiry of whether there was a formal arrest or restraint on freedom of movement "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Id. at 323. The Ninth Circuit has identified five factors relevant to determining whether an individual is "in custody":

> (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. Other factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; [these five] factors are simply ones that recur frequently.

United States v. Kim, 292 F.3d 969, 974 (9th Cir. 2002) (citation and internal quotation marks omitted).

5

The Court addresses each of the five factors and finds that the second factor mitigates in favor of finding that Brandenburg was in custody at the time of the interrogation, but that the first, and the third through fifth factors favor the finding that Brandenburg was not in custody.

The second factor is the extent to which the defendant is confronted with evidence of guilt and Brandenburg was certainly presented with his emails that contain threats to "bomb the mayor's office," "bomb the State Capital," and "bomb the 3rd District Courthouse." [Government's Exhibit List, filed 5/17/22 (dkt. no. 53), Exh. 5 (Signed Emails) at 2.] Moreover, Brandenburg confirmed that he sent the emails by placing his initials next to the emails. See id. Based on these circumstances, the evidence when viewed from an objective standpoint support a finding that Brandenburg was in custody. The remaining factors, however, do not support such a finding.

As to the first factor – the language used to summon Brandenburg – the evidence does not support a finding that the FBI agents used coercive language. When SA Alkhazaali told Brandenburg that the conversation was voluntary, Brandenburg stated "I am aware." [Trans. at 16.] Indeed, during one point in the interview, Brandenburg stated "I appreciate how you're talking to me." [Id. at 26.] After SA Alkhazaali responded with "[t]hank you[,]" Brandenburg stated, "[s]o what do you

wanna know?" [Id.]  The evidence presented shows that SA Alkhazaali engaged in a conversational tone with Brandenburg and ensured Brandenburg that the conversation was voluntary.  As such, the first factor weighs against a finding that Brandenburg was in custody.

The physical surroundings of the interrogation – the third factor – also do not indicate coercion.  Brandenburg was interviewed outside of his home.  Although police officers followed him inside of his home on two occasions to retrieve items, Brandenburg was free to return outside to continue the interview, which he did.  Brandenburg, therefore, was not restrained by physical force, threats, or intimidation.  See, e.g., United States v. Craighead, 539 F.3d 1073, 1085 (9th Cir. 2008).  Additionally, SA Alkhazaali testified that all of the officers and agents present wore aloha shirts with khaki pants – *i.e.*, not in uniform – and their firearms were concealed.  These facts differ significantly from cases where an individual was found to be in custody during an in-home interrogation.  See, e.g., id. (holding that a reasonable person would feel that his or her home was dominated by law enforcement if the law enforcement officers wore protective gear and some unholstered their firearms in the suspect's presence).

Brandenburg relies on Craighead for the proposition that he had nowhere else to go because he was already home and,

7

therefore, he was in custody. His argument is unpersuasive. The Ninth Circuit stated that "[i]f a reasonable person is interrogated **inside** his own home and is told he is 'free to leave,' where will he go? The library? The police station? He is already in the most constitutionally protected place on earth." Id. at 1083 (emphasis added). Here, and unlike in Craighead, Brandenburg was not interviewed inside of his home. Rather, he was interviewed outside of his home. SA Alkhazaali told Brandenburg that he was free to go if he did not wish to continue the conversation. Brandenburg could have removed himself from the conversation and entered his house if he did not wish to speak anymore. He did not. As such, the evidence does not support a finding that the physical surroundings of the interrogation were coercive and, thus, the third factor weighs in favor of a finding that Brandenburg was not in custody.

The fourth factor – the duration of the interrogation – also weighs against a finding that Brandenburg was in custody. SA Alkhazaali testified that the entirety of the interview lasted thirty-nine minutes. Nothing suggests that the length of the interview was burdensome or coercive to Brandenburg. In fact, toward the end of the interview, SA Alkhazaali reiterated to Brandenburg that he was "free to go anytime [he] want[ed] to go," and Brandenburg stated, "I don't want to go . . . ."

[Transcript at 32.]  This factor, therefore, weighs against finding that Brandenburg was in custody.

The fifth factor – the degree of pressure applied to detain the individual – weighs against a finding that Brandenburg was in custody because little to no pressure was applied to detain him.  The officers and agents did not brandish their firearms.  They were not in uniform.  SA Alkhazaali told Brandenburg numerous times that he was free to go if he wanted and that the conversation was voluntary.  Brandenburg insisted on continuing the conversation.  At the end of the conversation Brandenburg told SA Alkhazaali that he was "really impressed with the FBI" and he "like[d] them before [but] now [he] like[d] 'em even better."  [Transcript at 40.]  Because the evidence shows little to no pressure applied to detain Brandenburg, the fifth factor weighs against a finding that he was in custody.

Finally, the Court finds SA Alkhazaali's testimony to be credible.  SA Alkhazaali's tone during the testimony and in the Audio Recording support the finding that he was respectful and calm during his conversation with Brandenburg.  Moreover, Brandenburg's voice and tone in the Audio Recording support a finding that he was speaking voluntarily and without coercion.  In light of the Court's finding that four out of the five Kim factors favor the Government, the Court finds that Brandenburg

was not in custody at the time of the interview.  Accordingly, Brandenburg's Motion to Suppress must be denied.

## CONCLUSION

For the foregoing reasons, Brandenburg's First Pretrial Motion: Motion to Suppress Statement, filed April 26, 2023, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 24, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. BRYAN MELVIN BRANDENBURG; CR 22-00047 LEK; ORDER DENYING DEFENDANT'S FIRST PRETRIAL MOTION: MOTION TO SUPPRESS STATEMENT, [FILED 4/26/23 (DKT. NO. 49)]**